FILED

DEC 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Mustafa A. Abdullah
Register #05386-045
USMCFP Springfield
P.O. Box 4000
Springfield, MO. 65801-4000

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUSTAFA ABDULLAH

        Plaintiff,

     vs

UNITED STATES OF AMERCIA,
UNITED STATES ATTORNEY GENERAL,
in his individual and official capacity;
DIRECTOR FEDERAL BUREAU OF PRISONS,
in his individual and official capacity;
DEBRA PASCHAL, (AUSA Financial Litigation
unit), in her individual and official cap-
acity; Mr. GALLANTINE, (Trust Fund and Bus-
iness Office Supervisor), in his individual
and official capacity; DEBBIE DUNN (Unit
Manager), in her individual and official
capacity; et al.
        Defendants.

Case: 1:07-cv-02225
Assigned To : Unassigned
Assign. Date : 12/11/2007
Description: Pro Se Gen. Civil

**federal tort claims act
INTENTIONAL TORT
pursuant 28 uscs
§2671 et. seq.**

## COMPLAINT

In 1986, the United States Sentencing Commission concluded

that a proposed rule be published in the Federal Register 51 Fed.

Reg. 42.167 that promulgates an Inmate Financial Responsibility

Program, adopted by the Bureau of Prisons for Federal Prison

Industries (UNICOR).

Following this basic tenet -deriving from the Sentencing

Reform Act of 1984- the Inmate Financial Responsibility Program

-1-

RECEIVED

NOV 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

was codified in 1987 as 28 Code of Federal regulations §545.10-11.

Former United States Attorney General was an ex officio, a non-voting member of the Sentencing Commission who assisted with the implementation of 28 United States Code §994(t) and United States Sentencing Guidelines §5E1.2(i), whereupon these two laws established how to rehabilitate and reform a federal prisoner.

To wit, the Inmate Financial Responsibility Program was promulgated pursuant to the Administrative Procedure Act by being published in the Fed.Reg. 56 FR 23477, May 21, 1991. Wherefore, it was established that every court's jurist would aid in the pursuit of Effective criminal Law Administration by ordering a defendant to be obligated to pay into a victim impact/restitution fund and or for the cost of incarceration via judicial order.

However, in Plaintiff's case, his sentencing judge Elmo B. Hunter, did not -pursuant §5E1.2(a)(g)- establish whether plaintiff could afford to pay a fine that paralleled his sentence at that moment or in the foreseeable future. And, there was absolutely no mention of reducing the fine, pursuant to U.S.S.G. §5E1.2(f).

When it became ambiguous to the Unit Team members that Plaintiff didn't have an order to "pay in full immediately or via payment schedule", the Financial Litigation Unit was Contacted and Bureau of Prisons' employees were informed that Plaintiff must pay a $35,000.00 fine albeit he wasn't in Federal Industries, (UNICOR).

-2-

This became a very tricky situation due to the fact that Plaintiff was not making the required twenty-five dollars per month/quarter to have funds encumbered from his account. In fact, Plaintiff was "earning" approximately $8.00 per month. Whereby the Inmate Financial Responsibility Program ensures that (1) this program is designed for UNICOR workers, and (2) that it applies to earning interest (i.e. performance pay), not gifts /donation/charities from family and or friends.

Finally, because there was no written order or judicial recommendation that Plaintiff pay a fine 'during the term of his incarceration' any contract that was required of Plaintiff to sign/enter in an agreement with the Bureau of Prisons is null and void because statutory requirements, code of federal regulations, and institutional policies provide only federal prison indust- ries (UNICOR) workers to participate in an IFRP contract to pay fine and or restitution. Simply put, the court has indicated precisely that Plaintiff was allowed to pay his fine during the term of his supervised release probation conditions.

At the present filing of this Complaint Plaintiff has paid more than $4,000 through an invalid contract agreement via IFRP due to misinterpretation of the law, policy, and regulations, whereas violations of his property interest (legal tender..cash) was lost as a result of negligent acts of defendents acting within the scope of their employment.

-3-

## I.  JURISDICTION

1.  This court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C.S. §671 et. seq., and Sections 1346(b), 1331 and 2401(b) of this title.  The term "federal Agency" includes the executive departments, the judicial and legislative branches, but doesn't include any contractor with the United States.[1]

## II.  VENUE

2.  The District of Columbia is an appropriate venue under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.  PARTIES

3.  Plaintiff Mustafa A. abdullah is currently an inmate at the United States Medical Center for Federal Prisoners (hereinafter "Springfield"). His term of incarceration is 425 months plus supervised release probation conditions to follow immediately upon his release.

---

1.  Note: There are several loopholes in this general rule. First, the injury's not clearly within the scope of work assigned to the contractor, then the government may be liable.
Second, the government may sometimes be sued under the Federal Tort Claims Act for other kinds of negligence-...but rather seek to hold the government strictly liable for hazardous condition of the property.

An action shall not be instituted upon a claim against the U.S. for money damages..unless the claimant shall have first presented the claim to the appropriate federal Agency and his claim shall have been finally denied by the agency in writing...28 USC §2675(a).

4.  under federal law, Defendant U.S. Attorney General is responsible for any property loss as a result of the negligent acts of Bureau of Prisons employees acting within the scope of their employment.  <u>See</u>, 28 CFR §0.172 Part 14 <u>Administrative Claims Under Federal Tort Claims Act</u> and 28 USC §2675(a), §2677, and §2680(h). He is being sued in his individual and official capacities.

5.  Defendant harley G. Lappin is Director of Bureau of Prisons. He is responsible for the ongoing policy currently in place that shall both compel and restrict inmates to unwillingly participate in an Inmate Financial responsibility Program (hereinafter"IFRP") to encumber a minimum payment of $25.00 to pay for cost/fines/restitutions/assessment fees, whereby the statutory provisions of 18 USC §3572(d)(1) and 15 USC §1692(a) provides for payment on a date certain or installments, and that Congress did not intend to include government officials as "debt collectors". 15 USCS §1692 (a)(6). He is being sued in his individual and official capacities.

6.  Defendant Debra Paschal is an Assistant United States Attorney for the Western District of Missouri of the Financial Litigation Unit in Kansas City, Missouri. She is responsible for acting as a <u>debt collector</u> in the interest of justice, to have funds extracted from an inmates account once confirmation indicates that a contract agreement has been met via IFRP. She is being sued in her individual and official capacities.

-5-

7.   Defendant S. gallantine is Trust Fund and Business Office Supervisor.  He is responsible for collection of court fees and fines through prison Litigation reform Act contracts and from IFRP contracts, whereupon he then provides and forwards account payable receipts to the Litigation office. He is being sued in his individual and official capacities.

8.   Defendant Debbie Dunn is Unit Manager. She is responsible for ensuring that inmates with court commitment obligations participate in an IFRP contract, but not first without establishing whether the prerequisite formulas have been met to increase pay of terminate an inmate's contract because of his or her financial status. She is being sued in her individual and official capacities.

9.   At the time of the events described in this complaint, defendant Attorney general was an executive employee of the Bush Administration heading the department of Justice; upon information and belief, he is still employed by the President of the United States of America, stationed at the Department of Justice in Washington, D.C.

10.   At the time or the events described in this complaint, Defendant Harley G. Lappin was an employee of the Department of Justice as Director of Bureau of Prisons; upon information and belief, he is still employed by the agency, stationed at

the Federal Bureau of Prisons, in Washington, D.C.

11.  At the time or the events described in this complaint, defendant Debra Paschal was an employee of the Department of Justice as an assistant united States District Attorney; upon information and belief, she is still employed by the agency, stationed at the United States District Court for the Western District of Missouri, Financial Litigation Unit.

12.  At the time or the events described in this complaint, Defendant s. Gallantine was an employee of the Department of Justice's Federal Bureau of Prisons; upon information and belief, he is still employed by the agency, stationed at USMCFP Spring- field.

13.  At the time or events described in this complaint, Defend- ant Debbie Dunn was an employee of the Department of JUstice's Federal Bureau of Prisons; upon information and belief, she is still employed by the agency, stationed at USMCFP Springfield.

14.  At all times relevant to the events described herein, all the defendants have acted under color of state law.  Defendants may be served summons and Complaint at both the Department of Justice in Washington, D.C. and at USMCFP Springfield in Spring- field, Missouri pursuant to Federal Rules of Civil Procedure Rule 4 (d)(1).

## IV.   FACTUAL ALLEGATIONS

Clearly established law that has been arbitrarily miscon-
strued.

15.   The United States medical center for Federal Prisoners
Springfield is located in Springfield, Missouri. It holds appro-
ximately 1150 inmates, whereupon five units are for medical
patients, three are for work cadre, and eight other units are
for mental health patients.

16.   Plaintiff was sentenced March 2, 1990 to 425 months impri-
sonment, by the Western District Court of Missouri.  He has been
in numerous prisons (e.g USP Lewisburg, USP Atlanta, USP Flor-
ence, and FCI Pekin) prior to arriving at Springfield in 2002.

17.   It was unaminously determined at each of the aforemen-
tioned prisons that Plaintiff **did not have to participate in an
IFRP contract because, when the court was contacted in 1993, it
fully exclaimed that there wasn't an order given, and thus,
"Abdullah only has an obligation of payments of fine while on
supervised release".**

18.   Consequently, through a great deal of haggling and relu-
ctance on part of the Plaintiff, he affixed his signature to an
IFRP contract by writing "U.D.C."(Under threat of Duress and
Coercion).

19.   When the IFRP was adopted and promulgated in Fed.Reg. 56
23477 (May 21, 1991) it was presumably participation program that
was designed for Federal Prison Industries(UNICOR) workers,

-8-

due to the fact inmates financial obligations could be better attained from their performance pays. However, with much arbitrary discretionary authorities, the BOP has adopted it's own unique practice in acting as debt collectors for the courts if/even though an order was never provided to Plaintiff to (1) participate in a financial responsibility program, and (2) pay in full immediately or throughout the period of his incarceration.

20.    Therefore, Program Statement 5380.07 and 28 CFR §545.10 declares that, PROGRAM OBJECTIVE: (c) appropriate consequences will be incurred for inmates who refuse to participate in the IFRP of fail to comply with provisions of their financial plan.

21.    Plaintiff was forced to enter into a contract agreement with a debt collector or threatened with privilege restrictions. Never once did officials consider §545.11 PROCEDURES:...The unit team may postpone...inmates participation in the IFRP if staff determines the inmate has limited financial resources or five years or longer lengthy sentence. Whereas 35.4 years(i.e. 425 months) is a considerably lengthy sentence.

### DEFENDANTS' VIOLATED DUE PROCESS GUARANTEES

22.    From the Sentencing Reform Act of 1984 to the Administrative Procedure Act of 1991 to the Prison Litigation Reform Act of 1996,

it has always been unambiguous that IFRP contracts were for
Federal Prison Industries (UNICOR) workers, and , that options
could and should be afforded to inamte's with limited financial
resources and lengthy prison sentences.

23.    Assuming arguendo, that 15 USCS §1692(a) permits Defend-
ants to act as "Debt collectors" (i.e. collection agents), the
mere fact that there was no judicial order for Plaintiff to
participate in IFRP, or, to pay in full immediately gives pause
to due process violation of intentional tort from emotional dis-
tress because of family pressures of having legal tender(property)
lost through BOP psychologically coercing an invalid contract.
See, 28 USC §2680 (h). 2

24.    Defendants usurped Plaintiff's indefeasible rights to due
process guarantees by forcing him into a contract that should
never had been proffered as an agreement for district court when
no order was administered; and , Plaintiff's privileges were
threatened to be restricted if he did not participate in what
was to be understood a voluntary program(which came with conse-
quences.

---

2. Note: Although Section 2680 (h) is often described as the "intentional
tort exception" it covers both negligent and intentional misrepresentation.
Moreover, some intentional torts are not precluded. Courts have allowed
claims for intentional infliction of emotional distress because that tort
is not barred by the terms of the statute. This theory permits sexual
harassment complaints and other claims where the primary injury is
emotional distress.

-10-

Thus,as a result Plaintiff suffered property loss of the negligent acts BOP employees acting within the scope of their employment,3 violating his constitutional right for abuse of process.

### DEFENDANTS' VIOLATED EQUAL PROTECTION RIGHTS

25.  As a threshold matter of concern the district court had issued an order consistent with what Plaintiff had conveyed to his unit team members upon forcing him to sign an IFRP contract that his fine was to be paid upon supervised release.  (See Exhibit A: Judgment & Commitment Order)

26.  However,  because it had been a long held practice buffered by an invalid policy (not approved pursuant 15 USC §1692(a)), Defendant Ms. Dunn,  (and team members) contacted Defendant Pashal to determine when Plaintiff should pay his fine. Wherefore, Pashal allegedly permitted BOP officials to compel Plaintiff to enter into a contract via IFRP.

27.  Plaintiff's unit team members' obdurate dispositions were apathetic regarding what previous institutions had allowed him. In fact,  it was here that Plaintiff's equal protection right's suffered, because (1) BOP didn't acknowledge that there wasn't

---

3. The FTCA does not allow suit against the United States for violations of federal constitutional rights.  However, the FTCA permits claims for intentional torts, 28 USCS §2680 (h), then the Plaintiff may be able to pursue a tort claim against the government and a Bivens claim against a government employee in a single action. See, USCS §2679(b)(2) and FDIC v. Meyer, 510 U.S. 471 (1994).

-11-

any judicial order for Plaintiff to pay his fine in full immed-
iately, and to,  throughout his term of incarceration, (2) BOP
subjugated the statutory provisions outlined in 15 USC §1692(a)
and certain experts of PS 5380.07,  whereby BOP have never been
granted permission by Congress (or any branch of government) to
act as "debt collectors"/collection agents ect., especially when
it was never determined by district court IF Plaintiff was able
to pay fine then or in the future; and (3) assuming arguendo, the
Plaintiff has been treated like similarly situated individuals,
BOP may not arbitrarily create a formula to increase an inmates
payments without following the directive indicated within the
policy.

   28.  Upon information and belief,  officials have arbitrarily
and capriciously  implemented a plan to extort money (property)
from Plaintiff's family/friends by demanding he enter into a
contact (against statutory provisions)  to collect a debt that
the district court <u>had</u> <u>not</u> "ordered" be done, where his substan-
tive rights of due process guarantees and equal protection rights
have been usurped overzealously through gross negligence.

### ELEMENTS OF INTENTIONAL TORTS

   29.  Defendants have all deliberately threatened, psychologically
coerced,  demanded,  and arbitrarily indicated that Plaintiff

-12-

enter into contract by way of IFRP with the intent of fufilling

an alleged court requirement, for it was depicted that this was

an obligation on behalf of Plaintiff.

30. Defendants interferred with a judicial order contract with

one of their own that isn't valid enough to trump a district

court judgment.

31. Defendants have the intent of acting as collection agents/

debt collectors for the district court for Plaintiff to partici-

pate in an IFRP contract as his obligation permitted.

32. Defendants caused damage to Plaintiff of emotional distress,

burdened his family/friends of extorting them, and violated

his due process when they abused the process and he suffered

loss of his property (money), as a result of their negligence.

33. Upon information and belief, Defendants have all acted

negligently while causing severe damage to Plaintiff and his

family/friends to force him and them to cover the cost of an

obligation that wasn't announced in a judicial order; however,

defendants surmised that it was Congress' intent to allow BOP

employees to act as agents for the courts to collect fines e t.[4]

---

4. "The Act does not extend to such situations, though of course well known
   in tort law generally. It is to be involved only on a negligent or wrong-
   ful act or omission of an employee. Absolute liability of course arises
   irrespective of how the tortfeasor conducts himself: it is imposed auto-
   matically when any damages are sustained as a result of the decision to
   engage in dangerous activity." (quoting Dalchite v. U.S., 346 U.S. 15
   (1953). See, FTCA Laird v. Nelms, 405 U.S. 797 (1972) @797.

-13-

**Exhaustion**

34. Plaintiff has exhausted all available administrative reme-
dies regarding the matters described in this Complaint. On December
19, 2002, he filed a grievance requesting that his judicial
order be followed.  Whereby it was stated "I checked with your
case manager who has told you we have checked and the payments
is owed now.  Policy is being followed on the amount.  You have
to pay." On January 24, 2003, he filed a BP-9 grievance request-
ing/informing that "Court never stated 'Abdullah shall pay the
imposed fine during his term of incarceration'". Whereby  it was
stated in response that ""Absent direction from the court concer-
ning when an obligation should be collected, payments may begin
during an inmate's period of incarceration"". (# :88053-F1)   On
February 14, 2003, he filed a grievance requesting /informing
Regional Office that misinterpretation of Policy was in violation
of due process theory under McGlothin, 294 F. 3d 783 (8th Cir.
2001).  Whereas BOP exclaimed "BOP is well within the scope of
policy to encourage you to address your financial obligations,
assess your ability to pay, and to establish an appropriate
payment plan." then, on March 28, 2003, he filed a BP-11 to the
Central Office where defendant Lappin controls the athority,
requesting that BOP utilize the original $25.00 quarterly payments.
BOP responded "As indicated in your Judgement in Criminal Case,

-14-

any outstanding balance on your fine shall be paid in full within the term of supervised release.  Therefore, the court has not delegated it's athority in your case.  Through the IFRP, the BOP is not establishing a payment schedule,  but rather giving you an opportunity to demonstrate financial responsibility by addressing your financial obligation as ordered by the court."

July 29, 2007,  Plaintiff then filed a federal tort claim -after an arduous task of pursuing post-conviction relief via §2241, appeal,  rehearsing en banc,  and Supreme Court had all failed from 2003 thru 2007- requesting monetary damage of the sum of $4,000.  The claim was denied September 12, 2007 (# :007-05409).

Assuming arguendo,  if Defendants profess that Plaintiff is time-barred, then, it must consider 28 CFR §542.12 EXCLUDED MATTERS: (b) Requests or appeals will not be accepted under the Administrative Remedy Program for claims for which other admini-strative procedures have been established, including tort claims, Inmate Accident Compensation Claims, and FOIA requests. Copies of previous/ongoing grievances will be provided if reque-sted to the extent that contracts are stll being revised.

-15-

## V.  CAUSES OF ACTION

35.  Plaintiff support the following claims by reference to
the previous paragraphs of this Complaint:

### Count 1

36.  The violation or due process guarantees by defendants U.S.
Attorney General, Lappin, Paschal,  Gallantine,  and Dunn
fervently suggesting that Plaintiff participate in an IFRP con-
tract without an evidentiary hearing/judgement/order confirming
has deprived and continues to deprive Plaintiff of his rights
under Due Process clause of the Fifth and Fourteenth Amendment
to the United States Constitution.

### Count 2

37.  Defendant U.S. Attorney General's failure to notify the
U.S. Sentencing Commission that former promulgation of Sentencing
Reform Act 28 USC §991- 998 does not permit BOP to implement
contracts -that gives authority to become "debt collectors"-
and collect monies from inmates for court obligations, whereby
15 USC §1692:(a) presumes that Defendant's negligence violated
both due process and equal protection guarantees.

### Count 3

38.  Defendant Lappin's imputed knowledge of policy remains
enacted to trump judicial orders by arbitrarily supplementing

-16-

provisions in PS 5380.07 increase fine payments to be collected
by BOP employees, whereupon his continued failure to correct
this misinterpretation of disingenous facts violates stipulations
so ordered in judgement.

### Count 4

39.  Defendant Paschal total disregard for both supervised rel-
ease conditions and U.S.S.G. §5E1.2(i) makes her directly culpable
for directly depriving Plaintiff of his due process protections
to be determined whether he could afford to pay a fine at the
time or in the future, thus plaintiff suffered property loss
(money) as a result of the negligent acts and omission to inform
BOP employees that this interpretation may not arbitrarily be
construed as judicial intent, and was not in the scope of her
employment to authorize.

### Count 5

40.  Defendants Gallantine and Dunn's failure to allow certain
provisions to Plaintiff outlined in PS 5380.07/5E1.2(i) to consider
both Plaintiff's financial status and sentencing length for
him to be placed on "Temp. Exempt" status because IFRP specifi-
cally indicates for Federal Prison Industries (UNICOR) workers
has deprived him of property loss, then and now, for contracts are
constantly being revised each quarter as a reflection of money
he amasses from family and friends.

-17

In all five Counts each and every Defendant has deprived and continues to deprive Plaintiff of his substantive rights to due process guarantees and equal protection under the Fifth and Fourteenth Amendment to the United States Constitution.

## VI.  PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court:

1. Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

2. Enter an order in a judgement, pursuant 28 USC §2677, that the Attorney General or his designee may arbitrate, compromise, or settle any claim cognizable under §1346(b) of this title [28 USCS§1346(b)] after the commencement of this action.5

3. Enter an order/judgement in favor of Plaintiff for nominal, compensatory, and punitive damages, as allowed by law, against each defendant, jointly and severally, for suffering both loss of property (money) and emotional distress to Plaintiff, family and friends, to the amount of $5,000.00, at this time of filing.

4. Order such additional relief as this Court may deem just

---

5. Any award, compromise, or settlement in an amount of $2,500 or less made pursuant to this section shall be paid by the head of the Federal Agency.... Payment of any award, compromise, or settlement in an amount in excess of $2,500...shall be paid in a manner similar to judgements and compromises in like causes...under this chapter. [28 USCS §2671 et seq.]. See, Henson v. U.S., (1949, DC MO) 88 F.Supp 148.

-18-

and proper.<u>6</u>

Respectfully submitted this ____ day of _____, 2007.

Pursuant to 28 USC §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _____.

MUSTAFA A. ABDILLAH

---

6. The necessary consequence of the Court's holding in <u>Dalchite</u> is that the statutory language "negligent or wrongful act or omission of any employee of the Government" is a uniform federal limitation on the types of act committed by its employees for which the United States has consented to be sued. Regardless of state law characterization, the FTCA itself precludes the imposition of liability if there's been no negligence or other form of "misfeasance or nonfeasance." supra, footnote #4.

## CERTIFICATE OF SERVICE

I do hereby certify and verify that I did send, through the inmate legal mailing system, a true and accurate copy of FEDERAL TORT CLAIM ACTION, pursuant to 28 USCS §:671 et.seq., to the clerk of the court, on this _23_ day of _Nov. 2007_, to the address listed below:

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
U.S. COURTHOUSE
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 20001

MUSTAFA A. ABDULLAH